# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER J. FEDDER, | : |
| Plaintiff, | : |
| v. | : Civ. No. 24-462-GBW |
| LEWIS KESTER, et al., | : |
| Defendants. | : |

Christopher J. Fedder, Bear, Delaware – *Pro se* Plaintiff

Joseph Clement Handlon, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Lewis Kester, Irena Celpan, Charles Simpson, Troop 4 Delaware, State Police, and James Martinez

## MEMORANDUM OPINION

January 30, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I. INTRODUCTION

On April 11, 2024, Plaintiff Christopher J. Fedder initiated this action *pro se* with the filing of a Complaint. (D.I. 1.) Now pending before the Court is Defendants Lewis Kester, Irena Celpan, Charles Simpson, Troop 4 Delaware, State Police, and James Martinez's motion to dismiss the Complaint. (D.I. 7.) The Court grants Defendants' motion to dismiss for the reasons explained below.

## II. BACKGROUND

According to the Complaint, Defendants violated Plaintiff's First, Fourth, and Fourteenth Amendment rights by way of libel, defamation, illegal search and seizure, and denial of equal protection under the law. (D.I. 1 at 6.) On this basis, Plaintiff seeks money damages for resulting harms including emotional distress and financial loss associated with an inability to rent Plaintiff's residential property in Millsboro, Delaware. (*Id.* at 5.)

On April 16, 2021, Plaintiff received, and responded to, two voice messages from the Defendants Kester and Simpson, two detectives for Defendant Troop 4 Delaware, of Defendant State Police. (*Id.* at 11.) The same day, Defendant Simpson approached Plaintiff on Plaintiff's property in Millsboro. (*Id.*) Defendant Simpson pointed a gun at Plaintiff's head and yelled, "Get on the ground or I'll blow your head off." (*Id.*) Plaintiff complied, and Defendant Simpson

1

<a>
<p></p>
</a>

placed Plaintiff under arrest for shooting Jacob Burke in the ankle the day before. (*Id.*) Defendant Simpson then transported Plaintiff to Defendant Troop 4 for booking. (*Id.*)

Approximately four hours later, a judge issued an arrest warrant for Plaintiff, and Defendant Simpson took Plaintiff into an interrogation room, where Plaintiff was denied a copy of his arrest warrant and provided Defendant Simpson with the names of two witnesses who had observed Burke trespassing on Plaintiff's property and behaving aggressively towards Plaintiff the day before. (*Id.* at 11-13.) Plaintiff then appeared before a judge, he was charged with felony assault and possession of a firearm during a commission of a felony, and he was released on a $7,000 unsecured bond. (*Id.* at 12.)

Plaintiff only learned that he was arrested without a warrant after he was released on bond and returned home. (*Id.*) Plaintiff learned that, prior to his arrest, Defendant Simpson had told Plaintiff's neighbor, "I don't have a warrant, but if I see him, I'm gonna [sic] take him down." (*Id.*) Defendant Simpson arrested Plaintiff based on a Burke's statement to police, with no corroborating evidence, except for Defendant Simpson's "gut feeling of [Plaintiff's] guilt," even though Burke had criminal history, Burke delayed contacting police for two-and-half hours, and according to Defendant Kester, Burke behaved erratically at the hospital after Burke was shot. (*Id.*) Based on the foregoing, the Complaint alleges illegal

2

search and seizure by Defendant Simpson, in violation of Plaintiff's Fourth Amendment rights. (*Id.*)

After Plaintiff's arrest, Defendant Simpson "released a false and highly damaging narrative of events to three local media outlets and a radio station that intentionally and maliciously damaged [Plaintiff's] reputation beyond repair." (*Id.* at 14.) Plaintiff continues to be affected, personally and professionally, by this reputational damage. (*Id.*) On this basis, the Complaint alleges slander, libel, and defamation by Defendant Simpson, in violation of the First Amendment. (*Id.*)

Less than three months later, on July 1, 2021, Burke threatened to crash his truck into Plaintiff's home and set the house on fire, which Plaintiff reported to Defendant Troop 4. (*Id.* at 8.) Burke admitted to a Troop 4 officer, Defendant Martinez, that Burke had threatened Plaintiff, as Plaintiff had reported. (*Id.*) Plaintiff told Defendant Martinez that Plaintiff wanted to press charges against Burke, but Defendant Martinez tried to dissuade Plaintiff from doing so. (*Id.*) Defendant Martinez then filed a report, stating that there was "no victim cooperation," despite Plaintiff's cooperation, and Burke was never criminally charged for the threats. (*Id.*) Based on the foregoing, the Complaint alleges that Defendant Martinez denied Plaintiff equal protection under the law, put Plaintiff's life in jeopardy, and caused Plaintiff emotional distress. (*Id.*)

3

Three months later, on October 5, 2021, Plaintiff contacted Defendant Troop 4 due to Burke trespassing on Plaintiff's property again. (*Id.* at 9.) This time, Burke drove his truck onto Plaintiff's property and parked the truck, while it was running, facing Plaintiff's first floor bedroom window, with Plaintiff asleep inside. (*Id.*) A Troop 4 officer, Defendant Celpan, responded to Plaintiff's call and told Plaintiff that she could not charge Burke without proof. (*Id.*) When Burke admitted to Defendant Celpan that he had trespassed on Plaintiff's property, Burke was charged with trespassing and breach of release. (*Id.*)

Defendant Celpan then contacted Plaintiff to encourage him to settle a civil suit filed against Burke and, when Plaintiff refused, the trespass and breach of release charges against Burke were dropped, and Burke was released. (*Id.*) Although Defendant Celpan had stated that she would notify Plaintiff of Burke's release, Plaintiff was not notified. (*Id.*) Defendant Celpan also told Plaintiff that Burke was allowed to be on Plaintiff's property, and could even enter Plaintiff's home, and that Plaintiff would have no right to remove Burke, unless Burke threatened Plaintiff. (*Id.* at 10.) Based on the foregoing, the Complaint alleges that Defendant Celpan denied Plaintiff equal protection under the law and endangered Plaintiff's life. (*Id.*)

Last, between August 28, 2023 and September 1, 2023, when Plaintiff was tried before a jury for allegedly shooting Burke, Defendant Kester testified that Burke's behavior at the hospital after being shot had been "normal," despite

Defendant Kester's contemporaneously written notes indicating that Burke was "crazy as a sh*thouse [sic] rat." (*Id.* at 7.) Defendant Kester also testified that he did not know about any drug paraphernalia found on Burke, even though a hospital staff member testified to finding drug paraphernalia on Burke's person and giving it to Defendant Kester. (*Id.*) Based on the foregoing, the Complaint alleges that Defendant Kester committed perjury in an effort to convict Plaintiff. (*Id.*) Likewise, the Complaint alleges that, during trial testimony, Detective Simpson provided two different accounts of how *Miranda* warnings were administered during Plaintiff's April 16, 2021 custodial interview, which also amounted to perjury. (*Id.* at 11-12.)

## III.   LEGAL STANDARD

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of

entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. DISCUSSION

First, Defendants rightly asserts that the Eleventh Amendment proscribes

Plaintiff's suit against Defendants State Police and Troop 4 Delaware, as departments or agencies of the State of Delaware. (D.I. 7 at 3.) *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Jones v. Attorney Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018) (per curiam).

The Court construes the First, Fourth, and Fourteenth Amendment claims stated in the Complaint as arising under 42 U.S.C. § 1983, which gives individuals a right to sue state actors who deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws." Although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Alston v. Admin. Offs. of Delaware Cts.*, 178 F. Supp. 3d 222, 229 (D. Del.), aff'd, 663 F. App'x 105 (3d Cir. 2016). Further, a state agency "is not a person" subject to claims under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Based on the foregoing, the § 1983 claims raised against Defendants State Police and Troop 4 Delaware must be dismissed. *See, e.g., Jones v. Crisis Intervention Services*, 239 F. Supp. 3d 795, 799 (D. Del.), aff'd, 686 F. App'x 81

7

(3d Cir.) (finding Delaware State Police immune from suit in civil rights action); *Showell v. Quintero*, 2022 WL 911375, at *3 (D. Del. Mar. 28, 2022) ("Delaware State Police Troop 4 and 5 fall under the umbrella of the Delaware State Police, an agency of the State of Delaware . . . . Accordingly, it is immune from suit under the Eleventh Amendment.").

Next, Defendants rightly assert that most of the claims raised in the Complaint are time barred, and dismissal is warranted on that basis. (*See* D.I. 7 at 3-4.) Claims brought under § 1983 are subject to the statute of limitations for personal injury actions in the state in which the suit is brought. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006). In Delaware, absent tolling, the statute of limitations for personal injury claims is two years from the date the cause of action accrued. *See* 10 Del. C. § 8119; *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted). Accrual of a cause of action under § 1983 begins when a plaintiff "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). Absent any apparent basis for tolling, the statute of limitations for § 1983 claims arising from all facts alleged to have occurred in 2021 expired between six months and one year before the Complaint was filed (*see* D.I. 1 at 7-11), rendering all claims against Defendants Celpan and Martinez, as well as several claims against Defendants Kester and Simpson, time barred.

8

The only claims alleged to have occurred within the statute of limitations appear to be claims of perjury, arising from Defendants Kester and Simpson's trial testimony in August and September 2023. (D.I. 1 at 7, 11-12.) To the extent that Plaintiff intends to base these claims on criminal perjury statutes, such as 18 U.S.C. §§ 1621 and 1623, dismissal is warranted and amendment is futile because the criminal statutes do not confer a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002); *see, e.g., Smith v. Lynn*, 2019 WL 2410856, at *3 (D. Del. June 7, 2019), report and recommendation adopted, 2019 WL 4603800 (D. Del. Sept. 23, 2019), aff'd, 809 F. App'x 115 (3d Cir. 2020) (dismissing causes of action based on 18 U.S.C. § 1621 and other criminal statutes not conferring a private right of action). Private parties, such as Plaintiff, cannot enforce criminal statutes by way of civil actions. *See Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981) (per curiam); *see also United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996).

To the extent that Plaintiff intends to raise the perjury claims against Defendants Kester and Simpson as civil rights claims, pursuant to § 1983, Defendants rightly assert Defendants Kester and Simpson have absolute immunity with respect to any claim based on their trial testimony. (*See* D.I. 7 at 4.) Police officers who testify as ordinary trial witnesses and are neither accused of falsifying affidavits, nor fabricating evidence, receive absolute immunity from § 1983 suits based on their trial testimony, even if perjury is alleged. *See Briscoe v. LaHue*, 460

9

U.S. 325, 341-44 (1983) (declining to carve out an exception to the general rule of absolute witness immunity in civil rights cases based on alleged perjury by police officer trial witnesses). As such, although the perjury claims are not time barred, they also must be dismissed.

Plaintiff will be given an opportunity to file an Amended Complaint remedying the deficiencies discussed above. If Plaintiff chooses to file an Amended Complaint, it will wholly replace the Complaint (D.I. 1), and Plaintiff may not add any new claims. Plaintiff may only amend the allegations in the Complaint to remedy the above-discussed deficiencies. Plaintiff should be advised that filing an Amended Complaint that fails to remedy the above-discussed deficiencies will likely result in dismissal with prejudice. Alternatively, if Plaintiff chooses not to timely file an Amended Complaint, and instead takes no further action, the Complaint (D.I. 1) will be dismissed without prejudice and this case will be closed.

## V.   CONCLUSION

For the reasons discussed, the Court grants Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. (D.I. 7.) The Court will give Plaintiff an opportunity to amend the Complaint (D.I. 1) as set forth above.

An appropriate Order will be entered.